# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VOLTSTAR TECHNOLOGIES, INC. | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 2:12-cv-00082-JRG |
| | § | [Consolidated Case] |
| v. | § | |
| | § | |
| SUPERIOR COMMUNICATIONS, INC. | § | Civil Action No. 2:13-cv-00097-JRG |
| and | § | [Lead Case] |
| AT&T MOBILITY, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant AT&T Mobility, LLC's ("AT&T") and Superior Communications, Inc.'s ("Superior") Motions to Stay Proceedings. (No. 2:12-cv-00082, Dkt. No. 29; No. 2:13-cv-00097, Dkt. No. 22.) Given that the two motions involve common questions of law and fact, the Court deems it appropriate to address both motions jointly. Having considered the parties' written submissions, the Court DENIES both motions.

### I.     Background

The patents at issue relate to "zero-draw" battery-charging technology, which enables a charger to automatically turn itself off when the connected device being charged is unplugged from the charger, thereby reducing power consumption. The patentee, VoltStar Technologies, Inc. ("VoltStar"), began selling the first commercial embodiment of the technology, the VoltStar Eco Charger, in September 2009. Shortly after that, AT&T developed the AT&T Zero Charger, which allegedly incorporated VoltStar's technology. Superior, another Defendant, is AT&T's

1

manufacturer and sole source supplier for the AT&T Zero Charger.

VoltStar filed suit on February 29, 2012 against AT&T (the "AT&T case") for allegedly infringing U.S. Patent Nos. 7,910,833 (the '833 Patent) and 7,960,648 (the '648 Patent). A third patent, U.S. Patent No. 8,242,359 (the '359 Patent), was issued six months later on August 14, 2012, which VoltStar then incorporated into the AT&T case.[1] On February 1, 2013, VoltStar filed a separate suit against Superior (the "Superior case") for allegedly infringing the same group of patents, i.e., the '833 Patent, the '648 Patent and the '359 Patent (collectively, the "Patents in suit"). The AT&T case was later consolidated with the Superior case. (No. 2:13-cv-00097, Dkt. No. 20.)

On September 14, 2012, Superior filed requests for *inter partes* reexamination of all claims of each of the Patents in suit before the U.S. Patent and Trademark Office (the "PTO"). AT&T did not join as co-petitioner. The PTO granted Superior's requests for *inter partes* reexamination of the '833 Patent and the '359 Patent on October 25, 2012, and later granted its request as to the '648 Patent on November 1, 2012. On December 12, 2012, just one month after the PTO granted *inter partes* reexaminations as to all Patents in suit, AT&T moved to stay the AT&T case pending the outcome of the reexamination proceedings.

On March 25, 2013, the PTO issued an Action Closing Prosecution ("ACP") rejecting all claims of the '359 Patent. On April 3, 2013, the PTO issued two additional ACPs rejecting all claims of the '833 Patent and the '648 Patent. Following these events at the PTO, on May 7, 2013, Superior moved the Court to stay the Superior case pending the outcome of the reexamination proceedings. AT&T joined in Superior's motion, while preserving its own Motion to Stay. (*See* No. 2:13-cv-00097, Dkt. No. 26.)

---

[1] On April 11, 2013, the Court granted VoltStar's Motion for Leave to File First Amended Complaint for purpose of asserting the newly-issued '359 patent. (No. 2:12-cv-00082, Dkt. No. 34.) To this date, however, VoltStar has not filed its First Amended Complaint.

2

## II. Applicable Law

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain*, 356 F. Supp. 2d at 662 (citation omitted). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-cv- 81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

## III. Analysis

In this case, the first two of the above factors weigh against granting a stay. While the third factor weighs slightly to the contrary, the benefits of a stay are ultimately outweighed by various other considerations, which are discussed below.

### a. Prejudice or Disadvantage to Plaintiff

First, a stay may unduly prejudice the patentee, who has "an interest in the timely enforcement of its patent right." *Ambato Media, LLC v. Clarion Co., Ltd.*, 2:09-cv-242-JRG, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012). This is especially so where the parties are direct competitors in the market place. *See, e.g.*, *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are direct competitors, a stay would likely prejudice the non-movant."); *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-cv-242, 2008

WL 906315, at *1 (E.D. Tex. Mar. 31, 2008).  Here, VoltStar and AT&T compete directly in the battery charger market.  A denial of timely enforcement of VoltStar's patent rights would leave it without protection against unauthorized use of the patented technology, causing potential harm to its market share and future profits.

Defendants contend that a stay would not prejudice VoltStar because VoltStar has an adequate remedy at law.  Defendants base their argument on the assertion that the AT&T Zero Charger has been discontinued, thus posing no threat to VoltStar's market share.  However, Defendants fail to provide any specific evidence showing that the accused product has actually been discontinued and is no longer in the stream of commerce.  Nor did Defendants show that they are obligated in any way to refrain from developing similar products.  Clearly, they did not establish that a viable design-around has been developed.  Defendants' unsubstantiated assertion that the accused product has been discontinued, without more, fails to persuade the Court that there is no risk of injury to VoltStar or its market share.  Indeed, even assuming the AT&T Zero Charger has actually been discontinued, without the relief which VoltStar seeks through this litigation, Defendants are free at anytime to resume making the same or similar products incorporating the same technology.

Defendants further argue that any delay caused by a stay pending reexamination would be minimal given that the PTO has issued ACPs rejecting all claims of each of the Patents in suit. However, an Action Closing Prosecution is far from a final rejection.  In response to the issuance of an ACP, the patent owner has the right to make a submission to the patent examiner under 37 CFR 1.951(a).  MPEP § 2673.  This submission effectively initiates another round of arguments before the PTO's patent examiner, after which the examiner may reverse the rejection and allow the claims.  Further, reexamination does not end even if the examiner maintains the rejection of

4

the claims. Should that happen, a Right of Appeal Notice ("RAN") will be issued, freeing the parties to appeal the examiner's decision to the PTO Patent Appeals Board. The PTO Appeals Board will take up the case and hear another round of arguments. If the Appeals Board maintains the rejection of the claims, the patent owner may appeal the rejection of the claims to the United States Court of Appeals for the Federal Circuit. Thus, it is apparent that the reexamination proceedings in this matter are still very far from complete and may take years to conclude.[2] While the case is stayed, "witnesses may become unavailable, their memories may fade, and evidence may be lost." *Ambato Media*, 2012 WL 194172, at *1 (citation and quotations omitted). The risk of loss as to both witness testimony and other evidence is in fact heightened if the accused product has been, as Defendants allege in this case, discontinued. When a product is discontinued, experience shows that some of the responsible engineers and related personnel are more likely than otherwise to leave AT&T and Superior, making it increasingly difficult to secure testimony and evidence from them. *See id*. The Court concludes that a stay in these circumstances would unduly prejudice VoltStar both in the market place and in this litigation. The first factor weighs heavily in favor of denying a stay.

### b. Simplification of Issues

The second factor, whether a stay would simplify issues in this case, also weighs against granting a stay. Defendants allege that all the asserted claims will likely be cancelled or amended during reexamination, considering the PTO's positions in the Actions Closing Prosecution. The Court disagrees. As noted above, the reexamination proceedings are far from complete. The ACPs give little indication as to "the final scope of the claims that will eventually emerge from reexamination after [VoltStar] has exhausted all administrative and judicial courses of review."

---

[2] Defendants' own statistical evidence shows that *inter partes* reexaminations last three years on average. (*See* No. 2:12-cv-00082, Dkt. No. 29, Ex. 7; No. 2:13-cv-00097, Dkt. No. 22, Ex. 12.)

*SSL Servs., LLC v. Citrix Sys., Inc.*, 2:08-cv-158-JRG, 2012 WL 909318, at *2 (E.D. Tex. Mar. 16, 2012). Even if some of the asserted claims ultimately change in scope during reexamination, "the interests of justice will be better served dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold." *Id.* (citation omitted).

That said, the Court is mindful of the estoppel effect of *inter partes* reexaminations that may serve to simplify certain issues in this case, particularly those relating to validity of the patents. *See EchoStar*, 2006 WL 2501494, at *2 (granting a stay and giving weight to the estoppel effects on the third-party requester in an *inter partes* reexamination proceeding). Here, Superior, being the third-party requester of the reexaminations, is estopped from relitigating the same issues which "[it] raised or reasonably could have raised" during the *inter partes* reexamination proceedings. 35 U.S.C. § 315(e). A stay may potentially simplify these issues as relates to Superior. However, this is far from certain. Clearly, AT&T is not a party to the reexamination proceedings and would not be subject to the same potential estoppel as Superior. Thus, to the extent that estoppel may simplify any issues in this case, its effect is speculative and limited. Weighing both the possibility of some limited estoppel effect and the uncertainty over the scope of claims eventually emerging from reexamination, the Court believes a stay would not necessarily simplify issues in this case. The second factor weighs in favor of denying a stay.

### c. Status of This Case

The Court acknowledges that the third factor, whether discovery is complete and whether a trial date has been set, weighs slightly in favor of granting a stay. Here, deadline to complete fact discovery is five months away, and trial ten months away. (*See* No. 2:13-cv-00097, Dkt. No. 25.) Some discovery has been undertaken in the AT&T case but none in the Superior case. The parties have not yet filed their joint claim construction statement or proposed claim terms to be construed.

Ultimately, however, the Court finds that the benefits of a stay at this stage of the proceedings are outweighed by the various other considerations discussed above.

## IV. Conclusion

On balance, the relevant factors in this case favor denying the Motions before the Court. For these reasons, the Court DENIES AT&T's Motion to Stay (No. 2:12-cv-00082, Dkt. No. 29) and Superior's Motion to Stay (No. 2:13-cv-00097, Dkt. No. 22).

**So ORDERED and SIGNED this 22nd day of August, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE